```
 1                    UNITED STATES DISTRICT COURT

 2                FOR THE WESTERN DISTRICT OF TEXAS

 3                          EL PASO DIVISION

 4   UNITED STATES OF AMERICA )No. EP:22-CR-00037-KC-1

 5   vs.                       )El Paso, Texas

 6   APRIL CADENA              )
                               )February 22, 2023
 7   _____

 8

 9                              SENTENCING

10            Before the Honorable Kathleen Cardone

11

12   A P P E A R A N C E S:
     ----------------------
13   FOR THE GOVERNMENT:

14   MS. SARAH VALENZUELA
     ---------------------------------
15   Assistant United States Attorney
     700 E. San Antonio, Suite 200
16   El Paso, Texas 79901

17

18   FOR DEFENDANT:

19   MR. FRANCISCO MACIAS
     ---------------------------------------
20   1001 N. Campbell Street
     El Paso, Texas 79902
21

22

23

24       Proceedings reported by stenotype.  Transcript produced by

25   computer-aided transcription.
```

```
 1              MS. PADILLA:  The Court calls Cause No. EP:22-CR-0037,
 2   the United States of America versus April Cadena.
 3              MS. VALENZUELA:  Sarah Valenzuela for the United
 4   States.
 5              MR. MACIAS:  Good afternoon, Your Honor.  Francisco
 6   Macias for April Cadena.  We're here prepared for a sentencing.
 7              MS. PADILLA:  Please raise your right hand.
 8        Do you solemnly swear the testimony you give before this
 9   Court shall be the truth, the whole truth and nothing but the
10   truth so help you God?
11              THE DEFENDANT:  Yes, I swear.
12              THE COURT:  You're April Cadena?
13              THE DEFENDANT:  Yes, ma'am.
14              THE COURT:  You are here this afternoon having pled
15   guilty to Aiding and Abetting Kidnapping with a statutory
16   penalty of up to life of incarceration, a $250,000 fine, three
17   years of supervision and a $100 special assessment -- sorry,
18   five years of supervision and a $100 special assessment.  We're
19   here for your sentencing.
20        Do you understand that?
21              THE DEFENDANT:  Yes, ma'am.
22              THE COURT:  A sentencing report placed you at a total
23   offense level of 29, criminal history category of 5.
24   Ms. Cadena, you're looking at 140 to 175 months in jail, two to
25   five years of supervision, a 30,000 to a $250,000 fine and a
```

```
 1   $100 special assessment.
 2       Do you understand that?
 3              THE DEFENDANT:  Yes, ma'am.
 4              THE COURT:  Did you get a copy of the report and have
 5   a chance to go over it with your client, Mr. Macias?
 6              MR. MACIAS:  Yes, Your Honor.  I have gotten it, and I
 7   reviewed it, and I filed objections and I have also asked for
 8   other relief.
 9       Your Honor, my client received a letter from her daughter
10   last night.  I haven't been able to get it before you.  I
11   showed it to opposing counsel.  I will ask to approach to give
12   it to you.
13              THE COURT:  Okay.  You may take up any objections.
14              MR. MACIAS:  My first objection is that my client was
15   given two points because there was a weapon involved in the
16   offense.  I would invite the Court to take into consideration
17   that my client didn't know there was a weapon there.  She had
18   no control over it, and she never touched the weapon itself.
19       The second objection I have is I don't feel that my client
20   is just a minor role.  I feel she is at the bottom of this
21   offense completely.  She is not much more than an Uber driver,
22   and that's why I filed the second set of objections clarifying
23   that it wasn't my client that received the call from who they
24   call coconspirator No. 1, but rather somebody else was already
25   on the phone with him and he was asking questions.  He didn't
```

1  call her specifically.  He was already on the line.  She is no
2  more than an Uber driver in my opinion.
3       Do you want me to go into the living conditions she had?
4            THE COURT:  You had two objections.  I guess one
5  objection was the weapon?
6            MR. MACIAS:  Correct.
7            THE COURT:  Indicating she had no control.
8       Your other is -- wasn't there a plea agreement regarding
9  the minor role?
10           MR. MACIAS:  I know they gave her minor.  I didn't
11 know if it limited me in that respect.
12           THE COURT:  I don't know.  I just note that there was
13 a plea agreement.
14           MS. VALENZUELA:  It is what I was looking at, Your
15 Honor, at the sealed addendum where we usually put agreements
16 to role adjustments.  I know it was part of the negotiations,
17 but I believe that we didn't update including any language as
18 to an agreement as to role.
19           THE COURT:  Do you have a response regarding the use
20 of the weapon and the role?
21           MS. VALENZUELA:  First, I don't know if I received
22 those objections.  I can address them, Your Honor.
23      As far as the weapon that was used, there is nothing in the
24 guidelines indicating that the particular defendant had to know
25 beforehand that weapon was going to be used in order for that

```
1    enhancement to apply, if I remember correctly.
2         The fact of the matter is that the Defendant participated
3    in this kidnapping in which a weapon was used by one of the
4    coconspirators.  She was present for that, and she pled guilty
5    to the conspiracy.  Again, a coconspirator did use a weapon.
6    That's the fact of the matter.  I think that the enhancement
7    applies.
8              THE COURT:  Any comment on the minor role versus, I
9    think, he is seeking minimal role?
10             MS. VALENZUELA:  I think that the Defendant's role in
11   this case was minor as opposed to minimal.  She was
12   instrumental in helping to translate for this other individual,
13   that is Coconspirator 1, who was the head of this organization.
14   She was there with the victim translating for her because the
15   other individual that the Defendant worked for only spoke
16   Spanish.  She stuck around to do all of that.  I think her role
17   was minor and not minimal.  She was not simply just the driver.
18   She did stick around for some portion of the kidnapping.
19             THE COURT:  Two things.  I note that there is a
20   Government's motion, which I reviewed.  I don't have any
21   problems with it.  Before I decide on the minor or minimal role
22   and the use of a weapon, I want to hear from Ms. Cadena.
23        You may proceed with allocution, Mr. Macias.
24             MR. MACIAS:  Your Honor, I think she is minimal
25   because she did stick around, as the Prosecution has said, and
```

1  she did translate and she also calmed the person down.  She
2  told him, hey, you're going to be okay, nothing is going to
3  happen to you.  She was translating, but she was also
4  comforting the person that was there that this was happening
5  to.
6      Because she was a woman, and she didn't have anything to
7  do, and she didn't know they were going to bring her out by her
8  -- I don't know if it was by her hair or by the hoody she had
9  on.  Certainly, the woman was terrified, and my client did
10 translate.  She also told her, you will be okay, they are not
11 going to do anything to you.
12     As far as the minor role and minimal role, who is the
13 minimal role if it is not my client?  She is simply driving.
14 She is simply doing what they are telling her.
15     There was a portion in there she had been involved in other
16 things.  Well, she had been involved in other things because
17 they had her in there as a spy.  I will ask you to not attach
18 the two points to my client for a weapon even though she was
19 part of a conspiracy and she pled guilty.  I will ask you to
20 add two points to her reduction for minimal.
21     Your Honor, I would also like to address the circumstances
22 my client has lived in for the last 13 months.  I will also ask
23 you to get together with the other judges and the Marshals
24 Service and don't let anybody go to that place.  They have them
25 in -- I don't know.  Sometimes when I turn on the cold water

1  instead of the hot water when I take a shower, and to think my
2  client has to go through this every day and know she will just
3  be able to turn on cold water.  Sometimes it is freezing out
4  there at that place.
5      The other one is that there is no heat.  They don't give
6  them heat.  They don't even given them one of the things they
7  put in front of a restaurant to heat up things.
8      She lived in worse than third world conditions in my
9  opinion.  It is true this is the American way to make as much
10 profit as we possibly can off these people.  We shouldn't let
11 them live under these conditions and shouldn't let those
12 wardens out there treat them the way he treats them.  Until
13 they bring proper living conditions to these people, I don't
14 know what else to do besides raise it in a hearing.
15           THE COURT:  Let me say to you, Mr. Macias, I raised it
16 a number of times.  I work for the courts system.  I don't work
17 for the Justice Department.  I have no control over what the
18 marshals do.  I have no control over what the Department of
19 Justice does.  I certainly have no control over the Federal
20 Bureau of Prisons.
21     I hear what you are saying.  I had the discussions a number
22 of times.  In many ways it is out of the control of pretty much
23 everyone.  I think if you have a complaint and you got it
24 documented, you need to take it to the people that are housing
25 Ms. Cadena.  I certainly have, and I keep hearing everything is

1  fine.
2          MR. MACIAS:  I would ask you to incorporate it in your
3  sentencing.  I may be able to get a group of attorneys one day
4  and sue those people over there in Sierra Blanca and maybe
5  change things.
6      At this point I will ask you to give her 13 months credit
7  downward, one for no heat, and one for no hot water, and one
8  for letting her get sick where she spent a month in the
9  hospital system.
10     I couldn't say she has gone through hell.  It is just the
11 opposite.  She has gone through a frozen piece that none of us
12 can imagine what it is like out there in that kind of cold
13 weather and know you're powerless to do something about it.  At
14 least a hunter can crawl back in the truck or something if it
15 is too cold out there.  She couldn't.  She was already there.
16 I will ask you to take that into consideration when you
17 sentence her today.
18         THE COURT:  What did you want to tell me, Ms. Cadena?
19         THE DEFENDANT:  I really want to ask for forgiveness,
20 Your Honor, from everybody in this court and especially from
21 the victims of this case because I know anything I say is not
22 going to change what they have felt or any fear or any madness
23 they have.
24     I understand the feelings they have against me since I have
25 -- I am a single mother of three juvenile children.  They are

1  15, 14 and 12 years old.  I miss them every day, and I
2  understand what they must have felt when all of this situation
3  was going through.
4      I also want you to know that I am trying my best to change
5  the ways that I have, and I have been fighting especially
6  against my addiction that put me through a lot of abuses and a
7  lot of different arrests for being an addict.
8      I just want you to know I will accept with my heart
9  whatever sentence you give to me, and I will make my best of
10 this time.  I want to ask for mercy just for my kids.  They
11 need me because they don't have the support they need right
12 now.
13          THE COURT:  Ms. Cadena, let me say a couple of things
14 to you.
15    First of all, you know you have a criminal history category
16 of 5?
17          THE DEFENDANT:  Yes, ma'am.
18          THE COURT:  You also know you have a drug addiction?
19          THE DEFENDANT:  Yes.
20          THE COURT:  I don't disagree your children need you.
21 They don't need you in the condition you're in right now.
22 You're busy committing crimes and taking drugs, and I know your
23 children love you.  I'm reading this letter.  It doesn't change
24 the fact that you have made decisions repeatedly to have a
25 criminal history category of 5 and repeatedly made bad

1  decisions that have put you here and put your children in a
2  position they are writing to a judge because they want you
3  home.
4      Those are all decisions you made and not anybody else,
5  right?
6          THE DEFENDANT:  Yes, ma'am.
7          THE COURT:  Your attorney tells me, or asks me, to
8  give you minor role.
9      Let me ask you a question, Ms. Cadena.  My understanding of
10 this case is that you were advised about what was going to
11 happen, you were communicating via WhatsApp, or whatever, back
12 and forth.  You were told about the mission.
13     Why did you get involved in all of this?
14         THE DEFENDANT:  Excuse me, I was not advised this was
15 going to happen.  Nothing about the kidnapping, I didn't know
16 anything.
17         THE COURT:  What did you think you were going to be
18 doing?
19         THE DEFENDANT:  First of all, I was cooperating with
20 Homeland Security, Agent Powell Booth.  He told me to ask them
21 a couple of things.  It is why I was communicating with them
22 through WhatsApp.  It is when he started to say we were going
23 to go on a mission.  I just went.  I didn't know it was going
24 to be a kidnapping.
25     After all of the kidnapping happened, I got really scared

1  and I didn't say anything.  I didn't say anything.  After a
2  couple of months, I did.  I did send a message to Powell Booth
3  letting him know a couple of names and what was going on.  He
4  told me he wanted to talk to me and that I was probably going
5  to get arrested, and I told him where I was and everything,
6  ma'am.  They arrested me for this case.
7             MS. VALENZUELA:  May we approach?
8             THE COURT:  Sure.
9                      [Bench conference]
10            MS. VALENZUELA:  We had this issue with her not
11 wanting to admit that she did know in a sense what was going to
12 happen with the kidnapping.  I'm having issues with her
13 standing up.  She pled guilty to conspiracy to kidnap.  She is
14 coming up here saying she didn't know what was going to happen.
15    I think Mr. Macias talked to her a lot.  She debriefed.  We
16 got her to this point.  If she is attempting to minimize
17 everything that happened and possibly flow into questioning her
18 previous plea where she admitted to the conspiracy to kidnap, I
19 wanted to bring that to your attention.
20    I don't know if Mr. Macias wants to take a second to talk
21 to her before she starts saying anything else that might cause
22 the Government to want to withdraw its motion for substantial
23 assistance.  It doesn't seem she is taking responsibility for
24 her actions at this point.
25    Also, just to let you know, we are giving her credit up

1   front when usually we wait for them to testify.  She hasn't
2   testified in this case against any of the codefendants.  I
3   think Your Honor has the case that is actually indicted with
4   all the other coconspirators.  I wanted to bring that to the
5   Court's attention, and also we are giving her the one level off
6   up front because we're trying to honor all of her cooperation
7   she did beforehand.  It is seeming she is trying to retract --
8   or I don't know what is going on.
9           MR. MACIAS:  I don't think she is trying to retract.
10  I think she is trying to say, I was already in the middle of
11  this, and I found out they were kidnapping her, and I kept on
12  cooperating with the -- I took her to a different place, I
13  didn't go over there specifically to kidnap the person.
14      I think she also is saying she knows there was a kidnapping
15  and that she helped them, and she took her to a second place.
16  I don't think she is retracting that.
17      I think I am the one that is not minimizing her role but
18  saying, hey, if there is somebody with minimal role in this
19  thing, it is her.  She is a minor role because she is just
20  driving everything around and is not retracting she was
21  involved in the conspiracy.  She was.  She is admitting it.
22      She is also saying, hey, I debriefed five times, I told
23  them everything that I can, I am willing to testify, I am
24  scared and I was scared when I was there.  I don't think she is
25  trying to --

1          MS. VALENZUELA: Before she starts going down the road
2   of saying I don't know --
3          MR. MACIAS: Of course, I will not let her go any
4   further. I think she said everything she wanted to say. I
5   don't think she is trying to retract in any way.
6          THE COURT: I have a question. Was she under
7   supervision when all of this was going down?
8          MS. VALENZUELA: I don't remember.
9          MR. MACIAS: Well, she was communicating with Booth
10  and doing things with Booth, and she got -- picked up a state
11  charge.
12         THE COURT: How is Booth involved?
13         MS. VALENZUELA: He is an HSI agent she was
14  cooperating with.
15         THE COURT: How did she get hooked up with Booth?
16         MR. MACIAS: When she was in jail one time on the
17  stateside, there were a couple of what they call gang officers.
18  They brought Booth in, and she started telling them, Booth and
19  the two officers, about this woman who was doing things and
20  giving information who worked at the district clerk on the
21  stateside. It is how she gets involved with Booth.
22      They get even more and more involved, and Booth has her
23  doing things and giving information, and then when she finally
24  calls Booth and says, hey, I was involved in a kidnapping, he
25  said, you will get arrested, and he arrests her and we are

```
 1  here.  It gets real complicated.
 2              THE COURT:  These agents that use criminals to get
 3  more criminals -- she has a criminal history category of 5 and
 4  a drug addiction, and you throw her in with a bunch of
 5  criminals?  What does he think is going to happen other than
 6  her getting rearrested for being a criminal?
 7              MR. MACIAS:  It is the same thing they did in World
 8  War I and II.  The agents didn't go in themselves.  They
 9  recruited people and sent them in there.
10              MS. VALENZUELA:  To be clear, she was not recruited to
11  -- she went and gave information.  She was not recruited to be
12  an undercover or infiltrate any criminal organizations or
13  anything like that.  She was giving information.
14              MR. MACIAS:  If you talk to Booth, the place where
15  Booth got hold of her was in jail with these two gang
16  intelligence officers.
17              THE COURT:  I wanted to make sure, and it is why I had
18  Probation come up.  I know on occasion they use defendants to
19  work the cases.  I want to make sure she is not put in that
20  position.  She doesn't have the wherewithal to stay out of
21  trouble, and if she is put in that position again, I'm afraid
22  she is going to get worse.  I wanted to make sure.
23              MS. VALENZUELA:  No, she is not like a confidential
24  source anymore or getting paid.  She was, and she got arrested
25  for this offense.
```

```
 1              THE COURT:  That's my concern.  She was a confidential
 2   source and getting paid at the time?
 3              MS. VALENZUELA:  She got paid for information she
 4   gave.  It was not an ongoing.  I believe it was a one time
 5   thing where she gave some information.  Because she gave
 6   valuable information, they decided to pay her for that
 7   information.  It was not an ongoing relationship that I am
 8   aware of.
 9              THE COURT:  You have to love the justice system.
10              MR. MACIAS:  She also got involved in delivery of what
11   was supposed to be a key of cocaine.  By the time it gets to
12   her, everybody has taken a piece out of it.  It only comes out
13   to .24 of a key.  That's a state case that I am taking care of.
14              MS. VALENZUELA:  There is also the drug charges we are
15   dropping.
16              MR. MACIAS:  She was going to plead to across the
17   street.
18              MS. VALENZUELA:  She was caught with --
19              MR. MACIAS:  That's what I am pleading across the
20   street and hopefully running it concurrent with the sentence
21   here.
22              THE COURT:  Okay.
23                       [End of bench conference]
24              THE COURT:  Ms. Cadena, anything else you wanted to
25   tell me about all of this?
```

```
 1                THE DEFENDANT:  No, ma'am.
 2                THE COURT:  On behalf of the Government?
 3                MS. VALENZUELA:  No, Your Honor.
 4                THE COURT:  On the issue of the minimal role, I will
 5    go ahead and grant minimal role, and I will need a
 6    recalculation.
 7         On the objection to the plus two use of a weapon, I will
 8    overrule that objection.  I believe based on the information
 9    provided that it is attributable to Ms. Cadena.  I will
10    overrule that objection.
11         With the minimal role, where are we at?
12                MS. PANIAGUA:  Good afternoon, Your Honor.  Marisela
13    Paniagua with U.S. Probation.
14         With minimal role, Ms. Cadena is looking at a total offense
15    level of 27, criminal history category of 5, which brings her
16    to 120 to 150 months custody.
17                MR. MACIAS:  Is it 27 or 26?  The Judge said she was
18    28 and --
19                THE COURT:  I said 29 and 5.
20                MR. MACIAS:  Sorry, you're correct.
21                THE COURT:  It is 120 to 150 months of incarceration,
22    two to five years of supervision and a 25,000 to a $250,000
23    fine; is that correct?
24                MS. PANIAGUA:  That's correct, Your Honor.
25                THE COURT:  Based on the information provided, the
```

1    circumstances of this case, and in consideration of the 3553
2    factors and the goals of the sentencing guidelines, the Court
3    will find that a fair and reasonable sentence is a sentence of
4    110 months of incarceration in granting the Government's
5    motion.
6         Once released, you will be placed on five years of
7    supervision on a reporting basis.  You have to comply with all
8    the mandatory and standard terms and conditions of supervision.
9         You can commit no further crimes against the United States,
10   any state or local government.
11        You will be prohibited from possessing a firearm or other
12   dangerous weapon.
13        You will be ordered to refrain from the unlawful use of
14   controlled substances, submit to drug testing as required by
15   Probation and participate in a program approved by Probation
16   for drug addiction or alcohol dependency.
17        I will require mental health assessment and treatment.  You
18   are to follow the treatment program given to you by your
19   provider.  You're to take the medications that your provider
20   prescribes.
21        If there's a medication you don't want to take, Ms. Cadena,
22   you need to let your probation officer know that.  I'll have a
23   hearing to determine what to do.  You can't just decide you
24   don't want to take the medications.
25        I will require educational services to assist you to

1  getting your GED, a residential reentry if necessary for 180
2  days.  If you have a place to live that is approved, I have no
3  problems with that.
4      There will be no fine.  There's a $100 special assessment.
5      As part of your sentence, I am going to recommend the
6  comprehensive drug and alcohol treatment program while
7  incarcerated.  I think it is something that you need, and
8  hopefully it will help you once you go back into society.
9      You have the right to appeal my decision.  That information
10 will be given to your attorney.
11     Anything further on behalf of the Government?
12          MS. VALENZUELA:  The Government moves to dismiss the
13 indictment currently pending in this case.
14          THE COURT:  The Court will dismiss the indictment.
15     Anything further on behalf of the Defendant?
16          MR. MACIAS:  Are you going to recommend -- or who has
17 the drug program?
18          THE COURT:  I did recommend the comprehensive drug
19 treatment program.
20          MR. MACIAS:  You did.  You're recommending Phoenix
21 or --
22          THE COURT:  I can recommend wherever you want.  I have
23 no control over the Bureau of Prisons.  They will place her
24 where they think is best.  If you want me to recommend FCI
25 Phoenix or a facility close to El Paso, I am happy to do that.

1           MR. MACIAS:  She wants to get away from El Paso.  Can
2    we have California as a recommendation as long as they have the
3    drug program there?
4           THE COURT:  All right.
5           MR. MACIAS:  Thank you.
6           THE COURT:  You have the right to appeal my decision.
7    That information will be given to your attorney.  The Court
8    adopts the presentence investigation report in full other than
9    the recalculation for minimal role.
10       Anything further on behalf of the Government?
11           MS. VALENZUELA:  No, Your Honor.  Thank you.
12           THE COURT:  Anything further on behalf of the
13   Defendant?
14           MR. MACIAS:  No.  She was just concerned she doesn't
15   have a residence and what would they do as far as a halfway
16   house.  I told her we are still far away from that.  We will
17   take care of it when it happens.
18           THE COURT:  I will return that letter.
19           MR. MACIAS:  Thank you.
20           THE COURT:  There being no further matters, we stand
21   adjourned.
22
23                              * * * *
24
25

```
 1                         CERTIFICATION
                           _____
 2

 3        I certify that the foregoing is a correct transcript from

 4    the record of proceedings in the above-entitled matter.  I

 5    further certify that the transcript fees and format comply with

 6    those prescribed by the Court and the Judicial Conference of

 7    the United States.

 8

 9    Date:  April 13, 2023

10                                      /s/ Walter A. Chiriboga, Jr.
                                        _____
11                                      Walter A. Chiriboga, Jr.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```